**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATALIE RENTERIA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC., a<br>Delaware limited liability company.<br><br>Defendant. | Case No. 1:25-cv-01938-JLT-CDB<br><br>ORDER DENYING MOTION TO REMAND<br><br>(Doc. 6) |

I.    **INTRODUCTION**

Natalie Renteria originally brought this action against Amazon.com Services, LLC in the Superior Court of California for the County of Kern. (Doc. 1, at 18; Exhibit A "Complaint" at 1.) The Complaint raised five state law claims arising from her former employment with Amazon in Kern County, California: (1) Disability Discrimination in Violation of California's Fair Employment and Housing Act ("FEHA"); (2) Failure to Accommodate in Violation of FEHA; (3) Failure to Engage in the Interactive Process in Violation of FEHA; (4) Retaliation in Violation of FEHA; and (5) Wrongful Termination in Violation of Public Policy. (*Id.*)

On December 18, 2025, Defendant removed the case to this Court based on diversity jurisdiction. (Doc. 1 at 1.) Plaintiff then filed the instant motion to remand, arguing that Defendant failed to established subject matter jurisdiction. (Doc. 6. at 3–8.) For the reasons

1

discussed below, Plaintiff's motion to remand is **DENIED**.

## II.    BACKGROUND

Defendant is a limited liability corporation with a sole member, Amazon.com Sales, Inc. ("Amazon Sales"). (Doc. 1 at 5.) Amazon Sales is a Delaware corporation with its headquarters and principal place of business in Washington. (*Id.*) Plaintiff is a resident of Bakersfield, California. (*Id.* at 4; Ex. A ¶ 3.) She was formerly employed as a Warehouse Associate in Defendant's Shafter, California facility between September 27, 2024, and May 31, 2025. (Doc. 6 at 2–3.)

In her initial complaint filed in the Superior Court of California for the County of Kern, Plaintiff alleged suffering discrimination, harassment, and wrongful termination following an on-the-job injury at Defendant's facility. (Doc. 1 at 20–23; Ex. A ¶¶ 7–22.) On December 18, 2025, Defendant filed a Notice of Removal of Action to federal court based on diversity of citizenship. (*See generally,* Doc. 1.) Plaintiff now moves to remand the action to state court, arguing that Defendant has not satisfied the amount-in-controversy requirement and that the parties lack complete diversity of citizenship. (Doc. 6 at 6–8.) Defendant opposed the motion in full (Doc. 7), and Plaintiff filed a Reply. (Doc. 9.)

## III.    LEGAL STANDARD

"The federal removal statute provides that 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . may be removed by the defendant . . . to the district court of the United States.'" *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1184 (9th Cir. 2022) (quoting 28 U.S.C. § 1441(a)); *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009). "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts [original] jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019). Thus, a defendant may remove an action to federal court based on diversity jurisdiction. 28 U.S.C. §§ 1441(a), (b). Diversity jurisdiction "requires 'complete diversity' of citizenship, meaning that 'the citizenship of each plaintiff is diverse from

2

the citizenship of each defendant.'" *Demarest v. HSBC Bank USA, N.A.*, 920 F.3d 1223, 1226 (9th Cir. 2019) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). Defendants need not prove "to a legal certainty that the amount in controversy requirement has been met. . . . In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88–89 (2014) (quoting H.R. Rep. No. 112-10, at 16 (2011)).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas*, 553 F.3d at 1244 (citing 28 U.S.C. § 1447(c)). Ultimately, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Id.* (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992)). There is a "'strong presumption' against removal," and "the defendant always has the burden of establishing that removal is proper." *Gaus,* 980 F.2d at 566 (quoting *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir.1990)).

## IV.   DISCUSSION

In her opposition to Defendant's motion to remand, Plaintiff mounts a facial attack on Defendant's amount in controversy determination, noting that "the Complaint does not list any monetary figures, lest not enough for Defendant to claim the amount in controversy exceeds the $75,000 threshold." (Doc. 6 at 6.) Additionally, Plaintiff argues that Defendant has not adequately established diversity jurisdiction. (Doc. 6 at 7.) The Court rejects both of Plaintiff's arguments for the reasons discussed below.

### A.   Defendant Satisfies the Amount in Controversy Requirement

A defendant's notice of removal "need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. When a plaintiff contests the allegations in the notice of removal, the parties may "submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* at 82; *see also Wolfing v. Med. Mgmt. Int'l, Inc.*, No. 2:24-CV-01963-DC-JDP, 2024 WL 4904513 (E.D. Cal. Nov. 27, 2024) (applying *Dart Cherokee* outside the context of Class Action Fairness Act removals); *Anderson v. Wal-Mart Assocs., Inc.*,

No. 2:25-CV-01916-DJC-CSK, 2025 WL 3182767 (E.D. Cal. Nov. 14, 2025) ("Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold.") (citing *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam)).

Plaintiff contends that Defendant cannot demonstrate by a preponderance of the evidence more than $75,000 in claimed damages because "Plaintiff does not allege any monetary figures for lost earnings, emotional distress damages, punitive damages, or attorneys' fees . . . Even still, Plaintiff's Complaint does not explain how Plaintiff determined this amount." (Doc. 9 at 5.) Due to the generality of her claims for relief, Plaintiff notes the difficulty for Defendant to determine what amount currently stands in controversy, not to mention demonstrating damages in excess of $75,000.[1]

But the Ninth Circuit is clear: A plaintiff may not "prevent or delay removal by failing to reveal information showing removability" in the complaint. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). Rather, "the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* at 925 (internal citations omitted).

Far from being "boldly optimistic prediction[s]," *Romsa*, 2014 WL 4273265 at *2, Defendant's estimates are founded on the allegations of the Complaint, leading the Court to accept them as reasonable. The Complaint requests nine forms of relief:

---

[1] In support of this argument, Plaintiff cites four Central District of California cases, all of which address the circumstance of a plaintiff's *own* unreasonably high damages estimates, and none of which apply here. For example, in *Romsa v. Ikea U.S. W., Inc.*, the court found the plaintiff's own damages estimate to be so high such that it was "difficult to credit." No. CV 14-05552 MMM JEMX, 2014 WL 4273265 at *2 (C.D. Cal. Aug. 28, 2014). Within the context of an unreasonably high estimate, the court found it relevant that "[t]he statement of damages [did] not explain how [the plaintiff] arrived at these estimates." *Id. See also Schroeder v. PetSmart, Inc.*, No. CV191561FMOAGRX, 2019 WL 1895573 at *2 (C.D. Cal. Apr. 29, 2019) (noting the same); *Mata v. Home Depot U.S.A., Inc.*, No. CV221758FMOAFMX, 2022 WL 3586206 at *2 (C.D. Cal. Aug. 22, 2022) (same); *Owens v. Westwood Coll. Inc.*, No. CV13-4334-CAS-FFMX, 2013 WL 4083624 at *4 (C.D. Cal. Aug. 12, 2013) (rejecting as proof of the amount in controversy a set of demand letters putting forth "arbitrary settlement figure[s]").

1. For damages according to proof, including loss of earnings, deferred compensation, and other employment benefits;

2. For General damages, including but not limited to emotional distress, according to proof;

3. For other special damages according to proof, including but not limited to reasonable medical expenses;

4. For prejudgment interest on lost wages and benefits at the prevailing legal rate;

5. For restitution of unpaid wages to Plaintiff and prejudgment interest from the day such amount was due and payable;

6. For interest on the amount of unpaid wages, and other employee benefits at the prevailing rate;

7. For punitive damages;

8. For costs incurred by Plaintiff, including reasonable attorney's fees and costs of suit, in obtaining the benefits due Plaintiff and for violations of Plaintiff's civil rights through the Fair Employment & Housing Act . . .; and

9. For such other and further relief as the court deems just and proper.

(Doc. 1 at 40–41; Ex. A 23–24.) The Court need not address all nine causes of action to establish Defendant's satisfaction of the amount in controversy requirement.

1.      Plaintiff's Claim for Back Wages and Lost Wages

Both past and future lost wages are properly considered in determining the amount in controversy. *See*, e.g., *James v. Childtime Childcare, Inc.*, No. CIV.S-06-2676 DFL DA, 2007 WL 1589543 at *2 n.1 (E.D. Cal. June 1, 2007) ("The court evaluates the amount in controversy at the time of removal, but it may consider both past and future lost wages.") (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006)). In its Notice of Removal, Defendant conservatively estimated that Plaintiff worked 25 hours per week at $19.90 per hour. (Doc. 1 at 8–9.) However, in its opposition to Plaintiff's motion to remand, Defendant submitted a Declaration from Jacky Alamillo, Senior Human Resources Business Partner at Amazon (the "Alamillo Declaration"), indicating that at the time of termination, Plaintiff was scheduled to work 40 hours per week at $19.90 per hour. (Doc. 7 at 2.) This revised 40 hour per week calculation fails to account for the fact that, according to

the Complaint, Plaintiff allegedly worked somewhat less than 40 hours a week because of her physical therapy appointments and other medically excused time off.[2] (Doc. 1 at 25; Ex. A ¶¶ 35, 39.) Nevertheless, the Court finds that a calculation of backpay and lost wages using Defendant's conservative-yet-reasonable estimate of 25 hours worked per week would result in an amount of damages sufficient to satisfy the amount in controversy requirement when combined with Plaintiff's other alleged categories of damages.

Courts in this district determine lost wages using an estimated 52 weeks from the date of removal. *See*, e.g., *Zamudio v. Aerotek, Inc.*, No. 1:21-CV-01673-JLT-BAK (SKO), 2022 WL 458059 at *3 (E.D. Cal. Feb. 15, 2022); *see also Baghdararian v. Macy's, Inc.*, 2021 WL 4026760, at *5 (C.D. Cal. Sept. 2, 2021) (noting that "[w]hen the date of a trial is not set, courts have found one year from the date of removal to be a conservative trial date estimate"). Here, Plaintiff alleges that she was terminated on May 31, 2025. (Doc. 1 at 25; Ex. A ¶ 37.) Defendant removed this case to this Court on December 18, 2025. (Doc. 1 at 1.) There are 80 weeks (and 6 days) between those two dates. Therefore, using a 25-hour workweek at a rate of $19.90 per hour ($497.50 per week) over the course of 80 weeks totals $39,800. As such, the Court finds that Plaintiff's requested back pay and lost wages place at least $39,800 in controversy.[3]

### 2.    Plaintiff's Claim for Emotional Distress

Emotional distress damages are properly considered when determining the amount in controversy. *Macedo v. Dolgen California, LLC*, No. 1:23-CV-00840-KES-CDB, 2025 WL 2203021 at *5 (E.D. Cal. Aug. 4, 2025). "To establish probable emotional distress and punitive damages [where a complaint does not assert an amount claimed], a defendant may introduce evidence of jury verdicts from cases with analogous facts." *Owuor v. Wal-Mart Assocs., Inc.*, No. 2:21-CV-02232-KJM-JDP, 2022 WL 1658738 at *3 (E.D. Cal. May 25, 2022); *see also Kroske*, 432 F.3d at 980 (noting that the district court "properly considered . . . emotional distress damage awards in similar age discrimination cases" using a preponderance of the evidence standard).

---

[2] Plaintiff alleges no facts regarding how many hours she worked per week after her injury, nor does she controvert any part of the Alamillo Declaration.

[3] If the Court accepted Defendant's formula and performed this calculation with reference to a 40-hour workweek, it would place $63,680 in controversy.

Probative cases must be, "at a minimum, analogous to the case at issue." *Owuor*, 2022 WL 1658738 at *3 (quoting *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012)). But they need not be perfectly factually or legally analogous. *See Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034 (N.D.Cal.2002) (considering damages awarded in a "not perfectly analogous" case to be probative "that emotional distress damages in a successful employment discrimination case may be substantial"). Rather, "'[t]o serve as benchmarks' of the amount at stake, cases need not be 'perfectly analogous' but rather need only be 'sufficiently similar.'" *Macedo*, 2025 WL 2203021 at *6 (quoting *Owuor*, 2022 WL 1658738, at *3).

Defendant presents two separate sets of jury verdicts to support its contention, first in the Notice of Removal, (Doc. 1 at 9–10), and then in their Opposition brief, (Doc. 7 at 14–15).[4] The jury *Ko v. The Square Group, LLC.*, *D/B/A The Square Supermarket* awarded $125,000 in emotional distress damages in a disability discrimination action. JVR No. 1503030036, 2014 WL 8108413 (Cal. Super. June 16, 2014). The facts of *Ko* are comparable to the claims here: The plaintiff suffered a non-work-related injury (a kidney infection) and was allegedly terminated after requesting medical leave. *Id.* She claimed that her request for medical leave was denied without a good faith interactive process, and she was terminated on her first day back at work despite her ability to continue working with reasonable accommodations. *Id.*

Here, Plaintiff alleges she suffered a work-related injury and allegedly had her accommodations request granted but was then terminated based on her accumulation of unworked hours as she missed work to attend medically necessary appointments. (Doc. 1 at 37–38; Ex. A ¶¶ 110–18.) Both cases allege a failure of the interactive process resulting from medically necessary time off, resulting in unlawful disability discrimination and wrongful termination. *Ko*, 2014 WL 8108413; (Doc. 1 at 38–39; Ex. A ¶¶ 120–23). Further, this Court has found *Ko* to be probative in another case roughly analogous to the one at issue. *See Zamudio v. Aerotek, Inc.*, No. 1:21-CV-01673-JLT-BAK (SKO), 2022 WL 458059 at *1–4 (E.D. Cal. Feb. 15, 2022) (finding *Ko* probative on this point where the plaintiff suffered a physical on-the-job injury that impaired her

---

[4] The Court only finds it necessary to address the five cases laid out in the Opposition brief, which are both more recently decided and described by Defendant in greater detail.

ability to work, was terminated shortly thereafter, and brought claims for disability discrimination and failure to provide reasonable accommodations).

None of the other cases cited by Defendant are perfectly analogous, as none involve termination due to missed time directly resulting from on-the-job injuries. Nevertheless, they are "sufficiently similar" to reasonably "serve as benchmarks" of the amount at stake. *Macedo*, 2025 WL 2203021 at *6 (quoting *Owuor*, 2022 WL 1658738, at *3) (internal quotations marks omitted). In *Izaguirre vs. International Coffee & Tea LLC*, the plaintiff, a barista, injured her wrist in a car crash that was not work related. 50 Trials Digest 16th 13. She obtained a doctor's note allowing her to return to work with mild restrictions for four weeks. *Id.* On her first day back at work, the plaintiff claimed that the defendant's HR employee told her she needed to get the restrictions lifted or she would be terminated. *Id.* She did not and was subsequently terminated. *Id.* The California jury awarded her $80,000 in non-economic damages based on the defendant's alleged "failure to provide reasonable accommodation, failure to engage in the interactive process, disability discrimination, retaliation and wrongful termination." *Id.*; *See also Kolas vs. Access Business Group LLC*, 9 Trials Digest 11th 13 (awarding $200,000 in non-economic damages where the jury determined that a motivating reason for the defendant's decision to fire the plaintiff was the fact that he had filed a workers' compensation claim against them).

Given that these cases certainly "indicate[] that emotional distress damages in a successful employment discrimination case may be substantial," *Simmons*, 209 F.Supp.2d at 203, the Court finds that Plaintiff's emotional distress claim alone exceeds the $75,000 amount in controversy requirement.[5] In conjunction with Plaintiff's other claims, the amount in controversy requirement is well satisfied.

---

[5] The Court declines to consider punitive damages in its calculations. Defendant has shown that punitive damages are a possible outcome but has not demonstrated that "it is likely a jury would take the rare step of awarding punitive damages." *Zamudio v. Aerotek, Inc.*, No. 1:21-CV-01673-JLT-BAK (SKO), 2022 WL 458059 at *5 (E.D. Cal. Feb. 15, 2022). As to Plaintiff's claim for attorney's fees, the Court only notes that Plaintiff's FEHA claim allows the prevailing party to recover reasonable attorneys' fees. Cal. Gov. Code § 12965(c)(6). Because they are authorized by statute, attorneys' fees are properly considered as part of a complete amount in controversy calculation. *Kroske*, 432 F.3d at 980. Defendant submits that Plaintiff's request for attorneys' fees places $50,000 in controversy, (Doc. 7 at 16), and Plaintiff does not dispute that number on any substantive grounds.

**B.      Complete Diversity of Citizenship Exists Between the Parties**

Diversity jurisdiction requires "complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806). A corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1). For a international corporation like Amazon which does not conduct a "substantial predominance" of its business in any particular state, federal courts apply the "nerve center" test, which defines the principal place of business as "the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). That nerve center is "typically . . . found at a corporation's headquarters." *Id.* at 81. But courts must ensure "that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Id.* at 93.

The parties agree that Plaintiff maintains her domicile in the state of California and is therefore a citizen of California.[6] (Doc. 6 at 7.) Plaintiff incorrectly contends that Defendant "is incorporated and holds its principal place of business in California."[7] (*Id.* at 6.) Defendant is a limited liability corporation, which "is a citizen of every state of which its owners/members are citizens." *3123 SMB LLC v. Horn*, 880 F.3d 461 (9th Cir. 2018) (internal quotations omitted). Defendant's sole member is Amazon Sales, Inc. (Doc. 1 at 58; Hackett Decl. at 2). Amazon Sales, Inc. is incorporated in Delaware and maintains its headquarters in the state of Washington, where its officers direct its activities. *Id.* Thus, its principal place of business is Washington. *See*, e.g., *Cafe v. Prime Now LLC*, No. 2:23-CV-02867-TLN-CSK, 2024 WL 3949353 at *1 n.2 (E.D. Cal. Aug. 27, 2024) (finding that Amazon Sales, LLC maintains its principal place of business in

---

[6]  It has long been established that "[t]he place where a [person] lives is properly taken to be his domicile until facts adduced establish the contrary." *D.C. v. Murphy*, 314 U.S. 441, 455 (1941) (citing *Ennis v. Smith*, 55 U.S. 400, 423 (1852)).

[7]  Plaintiff makes this contention despite also "conced[ing] that Defendant is incorporated and holds its principal place of business in Delaware." (Doc. 6 at 7.)

Washington); *Knuth v. Amazon.com Servs.* LLC, No. 23-CV-05366-WHO, 2025 WL 654098 at *1 (N.D. Cal. Feb. 28, 2025) (same for Defendant, Amazon.com Services, LLC).

Because Defendant is a citizen of Delaware and Washington, and Plaintiff is a citizen of California, each defendant is a citizen of a different state than each plaintiff. Thus, complete diversity exists between the parties, and the exercise of diversity jurisdiction is proper.[8]

V.   CONCLUSION

For the reasons discussed above, Plaintiff's motion to remand the action, Doc. 6, is **DENIED**.

IT IS SO ORDERED.

Dated:   **April 6, 2026**

_____
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiff makes a brief auxiliary argument that "this case implicates the voluntary/involuntary rule because the Complaint could not have been filed in federal court due to the lack of complete diversity amongst the parties . . ." (Doc. 6 at 6.) The voluntary/involuntary rule only applies to cases which, "at the time of filing, could not have been brought in federal court." *People of State of Cal. By & Through Lungren v. Keating*, 986 F.2d 346, 348 (9th Cir. 1993); *see also* (Motion to Remand, Doc. 6 at 5–6) (quoting the above). Because the Court has determined that this case was removable at the time it was filed, the exercise of federal jurisdiction does not violate the voluntary/involuntary rule.